FILED
9/29/23 12:18 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 23-20721-GLT |
| | Chapter 13 |
| **TIFFANY MITCHELL-FIELDS**, | |
| *Debtor*. | Related to Dkt. Nos. 13, 35, 37 |

Michael S. Geisler, Esq.
Pittsburgh, PA
*Attorney for the Debtor*

## MEMORANDUM OPINION

Attorney Micheal S. Geisler, Esq. filed this case ostensibly on behalf of Tiffany Mitchell-Fields to stop an imminent sheriff's sale.[1] He received $500 prepetition for his services.[2] A month later, the Court dismissed the case after the Debtor failed to: pay any portion of the filing fee; obtain prepetition credit counseling or provide proof of exigent circumstances warranting an exemption; timely file complete and accurate schedules and a chapter 13 plan; make any plan payment to the chapter 13 trustee; and attend a show cause hearing as directed.[3] Given her total lack of effort, the Court ordered the Debtor to show cause why dismissal should not be with prejudice to future bankruptcy filings.[4]

When Attorney Geisler appeared in opposition to a filing bar, he revealed a series of facts which call into question whether he should have filed this case at all. Indeed, he has never met the Debtor nor confirmed her identity.[5] She allegedly contacted him by phone a day

---

[1] See, e.g., *Debtor's Motion for Enlargement of Time to Complete Credit Counseling*, Dkt. No. 4 at ¶ 5.

[2] See *Supplement to Debtor's Application to Pay Filing Fee in Installments*, Dkt. No. 21 at ¶ 3.

[3] *Text Order*, Dkt. No. 35.

[4] Id.

[5] *Audio Recording of May 31, 2023 Hearing* at 12:50:26-12:51:10 p.m.

or so before the sheriff's sale after receiving a direct mail solicitation.[6] Since then, communication between the two has been infrequent.[7] And while the Debtor's written response blamed her inaction on disability and chronic illness,[8] Attorney Geisler went further to expressly cast doubt on her mental capacity and lucidity.[9] Dumbfounded, the Court took the matter under advisement.

Ultimately, the Court finds ample cause to impose a filing bar but lacks confidence that Tiffany Mitchell-Fields is, in fact, the Debtor or legally competent. Thus, for the reasons set forth below, a filing bar is inappropriate.

## I.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II.    DISCUSSION

Section 349(a) of the Bankruptcy Code[10] permits the Court to dismiss a case with prejudice to the filing of a subsequent petition.[11] A lack of good faith is sufficient cause for a

---

[6]    Id. at 12:48:35-12:49:48 p.m.

[7]    Id. at 12:48:26-12:48:32 p.m., 12:5545-12:55:52 p.m.

[8]    *Response to Order to Show Cause*, Dkt. No. 37 at ¶ 2-4.

[9]    *Audio Recording of May 31, 2023 Hearing* at 12:49:57-12:50:26 p.m.

[10]   Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[11]   11 U.S.C. § 349(a).

dismissal with prejudice.[12] The United States Court of Appeals for the Third Circuit instructs that "the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances."[13] Factors that may inform the inquiry into a chapter 13 debtor's good faith include:

> (1) the timing of the petition;
>
> (2) the debtor's motive in filing the petition;
>
> (3) how the debtor's actions affected creditors;
>
> (4) the debtor's treatment of creditors both before and after the petition was filed; and
>
> (5) whether the debtor has been forthcoming with the bankruptcy court and the creditors.[14]

Here, the Debtor's petition was filed to stop a sheriff's sale of her real property. Once she had the benefit of the stay, however, the Debtor did *nothing* to move this case forward. She did not pay any portion of the filing fee even though the Court provisionally granted her application to pay it in installments.[15] Nor did the Debtor file schedules[16] and a chapter 13 plan,[17] or commence plan payments within 30 days of the petition.[18] She also failed to establish her eligibility for chapter 13—a threshold issue—by justifying her failure to complete credit

---

[12] See In re Reppert, 643 B.R. 828, 847 (Bankr. W.D. Pa. 2022); In re Ward, 610 B.R. 804, 807 (Bankr. W.D. Pa. 2020); In re Stone Fox Cap. LLC, 572 B.R. 582, 591 (Bankr. W.D. Pa. 2017) (citing In re JER/Jameson Mezz Borrower II, LLC, 461 B.R. 293, 304 (Bankr. D. Del. 2011)).

[13] In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996).

[14] Id. (quoting In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992)) (quotation marks omitted); see In re Myers, 491 F.3d 120, 125 (3d Cir. 2007); G6 Hospitality Franchising LLC v. Zaver (In re Zaver), 520 B.R. 159, 165 (Bankr. M.D. Pa. 2014).

[15] See Fed. R. Bankr. P. 1006(a).

[16] See 11 U.S.C. § 521(a)(1).

[17] See 11 U.S.C. § 1321.

[18] See *Chapter 13 Initial Case Management Order*, Dkt. No. 14 at ¶ 1.

counseling prepetition.[19]  And even though creditors were stayed for only one month, it was still an unreasonable and prejudicial delay given the lack of any genuine effort towards confirmation.

To the extent that the Debtor's poor performance was attributable to serious illness or disability as Attorney Geisler suggests, the Court sympathizes.  But illness and disability do not relieve debtors from all their statutory duties.  Chapter 13 cases are not static; they must progress.[20]  To that end, debtors should proactively seek appropriate accommodations when necessary, and it may be incumbent on counsel to provide some as well.[21]  Frankly, after the fact excuses for unfulfilled requirements can create the perception of stagnancy and raise credibility issues.[22]

The total dereliction of every obligation imposed on a chapter 13 debtor is emblematic of bad faith sufficient to warrant a filing bar.  Nevertheless, there is a hiccup.

Attorney Geisler has never met with the Debtor.  A voice on the telephone asked him to file a chapter 13 petition and he did because he received $500.  Attorney Geisler neither knew this person nor confirmed their identity, reasoning that the chapter 13 trustee does that at the meeting of creditors.  Of course, this case never progressed that far.  Now, to refute the

---

[19] See 11 U.S.C. § 109(h).  To obtain an enlargement of time to complete credit counseling, the debtor must file a *certification* that: (1) describes exigent circumstances that merit a waiver of the prepetition requirement; (2) states the debtor requested credit counseling services from an approved agency, but was unable to obtain the services within seven days of making the request; and (3) is satisfactory to the court. 11 U.S.C. § 109(h)(3)(A).  Although Attorney Geisler filed a motion requesting an extension on the Debtor's behalf, it was not a "certification" because she did not sign it.  See In re DiPinto, 336 B.R. 693, 696 (Bankr. E.D. Pa. 2006); In re Hubbard, 332 B.R. 285, 289 (Bankr. S.D. Tex. 2005).  Nor was the bare-bones recitation of the second element satisfactory.  The Court once again reiterates that a lack of opposition to a request for relief cannot free the debtor from the affirmative evidentiary burdens imposed by the Code.  See In re West, No. 23-20618-CMB, 2023 WL 4387030, at *3 (Bankr. W.D. Pa. July 6, 2023).

[20] See In re Guy, No. 22-21292-GLT, 2023 WL 5673821, at *4 (Bankr. W.D. Pa. Sept. 1, 2023); In re Kelly, 649 B.R. 448, 452 (Bankr. W.D. Pa. 2023).

[21] For example, if a debtor is hospitalized or has mobility issues, perhaps counsel should visit them rather than waiting indefinitely for the situation to improve.

[22] Though it is certainly possible for an attorney to have multiple disabled, sick, or hospitalized clients, it is natural for doubt to arise when an attorney too regularly provides the same defense to inaction.

4

appearance of bad faith and justify his client's consistent noncompliance with Court orders, Attorney Geisler suggests that "she's not all there."[23]

This situation is beyond the pale. But since Attorney Geisler unintentionally cast doubt on the Debtor's identity and lucidity, a dismissal with prejudice is problematic on this record. At the same time, it is not worthwhile to expend resources to resolve these questions unless she refiles. Accordingly, the Court will forgo a filing bar for now, but may revisit the issue of good faith in a new case.

That said, *attorneys must meet their clients*. It is simply not possible to comply with the Pennsylvania Rules of Professional Conduct without doing so. Indeed, the mandate to "provide competent representation to a client" requires, among other things, "thoroughness and preparation reasonably necessary for the representation."[24] Confirming the identity of a client before filing a bankruptcy petition—an act with substantial legal consequences—easily falls within the definition of "reasonably necessary" preparation.[25] An attorney must also "reasonably consult with the client about the means by which the client's objectives are to be accomplished."[26] While there is nothing inherently wrong with consulting a client by telephone, it presupposes that the attorney knows the voice on the other end. A cold call could be anyone. We unfortunately live in a world full of "Nigerian princes," colorful "phishermen," and identity

---

[23] *Audio Recording of May 31, 2023 Hearing* at 12:49:57-12:50:07 p.m.

[24] Pennsylvania Rules of Prof'l Conduct 1.1.

[25] Id.

[26] Pennsylvania Rules of Prof'l Conduct 1.4(a)(2).

thieves intent on perpetrating imposter scams.[27]  Counsel needs to be sure on whose behalf they are filing a petition to satisfy both their ethical and legal obligations.[28]

Ironically, Attorney Geisler's defense of the Debtor—that her failings stem from a diminished mental capacity—emphasizes another danger inherent to not having met his client. The rules command attorneys to assess whether a "client's capacity to make adequately considered decisions in connection with a representation is diminished" and determine its impact on "the client-lawyer relationship."[29]  Not only is this important to the ethical conduct of the representation, but is critical to whether the lawyer has been retained in the first place.  After all, "[t]he validity of every contract," including those between an attorney and client, "is dependent upon the capacity of the parties thereto to contract."[30]  Though capacity and lucidity are often challenging for a lay person to ascertain, direct observation during a consultation is the best means available.  For this reason, it is reckless to proceed with a representation without a face-to-face meeting.

Attorney Geisler insists that he has learned "valuable lessons" from this case and will not repeat these mistakes.[31]  The Court sincerely hopes so, but other statements made during oral argument leave room for doubt.[32]  Without mincing words, Attorney Geisler created the

---

[27]  See, e.g., Phones Scams, Federal Trade Commission, (Sept. 27, 2023, 1:20 p.m.), https://consumer.ftc.gov/articles/phone-scams#examples%20of

[28]  Without belaboring the point, Attorney Geisler also made representations to the Court about the reasonableness of his inquiry into the facts of this case by electronically filing the petition.  See Fed. R. Bankr. P. 9011(b).

[29]  Pennsylvania Rules of Prof'l Conduct 1.14(a).

[30]  First Nat. Bank of Verona, for Use of Laris v. Walsh, 349 Pa. 241, 244, 37 A.2d 130, 132 (1944); see Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd., 559 Pa. 56, 62–63, 739 A.2d 133, 136 (1999) ("The law of this Commonwealth makes clear that a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract.").

[31]  Audio Recording of May 31, 2023 Hearing at 12:51:47-12:52:13 p.m.

[32]  Id. at 1:00:39-1:00:44 p.m. ("I don't know . . . how much further you want me to investigate whether or not we have the right person, your honor."), 1:01:31-1:01:34 p.m. ("I think we're making more out of this than there is.").

impression that he was content to take a $500 fee and ask questions later.  In fact, he shockingly seemed to imply his conduct was reasonable given the modest size of the retainer.[33]  Of course, Attorney Geisler's focus proves the point.  As does his touting of his decades of bankruptcy experience while stumbling over a basic element of practice.[34]  Still, rather than press the matter further, the Court will trust that the appropriate lessons have been learned.  Should Attorney Geisler prove otherwise in the future, there will be sanctions.

### III. CONCLUSION

In light of the foregoing, the Court's order to show cause is released.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: September 29, 2023

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor

---

[33]   Id. at 12:5545-12:55:52 p.m.

[34]   Id. at 12:54:11-12:54:14 p.m. (("I've been practicing law since 1984.  You think I need a lesson?").